# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALFRED GEORGE,
          Plaintiff,

    v.                                                        Case No. 05-C-0470

RACINE COUNTY,
ROBERT D. CARLSON,
WILLIAM GABBEY,
JOHN GORDON, and
JAMES SCHERIFF,
          Defendants.

## DECISION AND ORDER

Plaintiff Alfred George, a former Racine County Sheriff's Department jail guard, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, Racine County and several of plaintiff's former co-workers and superiors, violated his right to due process by coercing him to resign and damaging his reputation, and his right to equal protection by discriminating against him based on his race (African-American). Defendants now move for summary judgment.

## I. FACTS

Based on inmate complaints, the Racine County Sheriff's Department conducted an investigation and concluded that on January 22, 2005, plaintiff violated the department's use of force and OC spray policies by using OC spray on and in the vicinity of inmates unjustifiably, without calling in other deputies for assistance before using the spray, and without allowing the inmates to decontaminate themselves. As a result, deputies recommended to defendant Carlson, the Sheriff, that plaintiff be terminated. They also recommended to the district attorney that plaintiff be criminally prosecuted. On February 2, plaintiff was given a disciplinary packet, which included the recommendation for

termination. On February 4, 2005, plaintiff met with defendant Carlson and others and accepted responsibility for his actions. Defendant Carlson told plaintiff that he would terminate him unless he resigned, and that resigning might help him with the district attorney. Plaintiff then resigned. I will state additional facts in the course of the decision.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may satisfy its initial burden by pointing out that there is an absence of evidence to support the non-moving party's case. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the

---

[1] In several respects, plaintiff's response to defendants' proposed findings of fact does not comply with Local Rule 56.2. However, because defendants' motion must be granted on the merits, I will not address this matter.

pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

### III. DISCUSSION

**A. Due Process Claim**

**1. Deprivation of Property Interest**

The Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. Plaintiff alleges that defendants deprived him of his property interest in his job by coercing him to resign. In effect, plaintiff alleges that defendants constructively discharged him to avoid having to utilize the termination procedures to which he as a public employee was entitled. Constructively discharging an employee from a position in which he has a protectable property interest such as plaintiff's may be actionable under § 1983. Yearous v. Niobrana County Mem. Hosp., 128 F.3d 1351, 1355 (10th Cir. 1997). Defendants argue that they did not deprive plaintiff of a property interest because they did not constructively discharge him; rather, he voluntarily resigned. If plaintiff resigned of his own free will, he relinquished his property interest voluntarily, and therefore, defendants did not deprive him of property without due process. See Dixon v. City of New Richmond, 334 F.3d 691, 695-96 (7th Cir. 2003); see also Flynn v. Sandahl, 58 F.3d 283, 289 (7th Cir. 1995); Alvarado v. Picur, 859 F.2d 448, 453 (7th Cir. 1988).

An employee who resigns is presumed to have done so voluntarily. Alvarado, 859 F.2d at 453. To overcome this presumption, plaintiff "must establish that defendants' conduct effectively deprived him of free choice in the matter." Austin v. Turner, No. 04c1149, 2006 U.S. Dist. LEXIS 62445, at *6 (E.D. Wis. Aug. 31, 2006) (citing Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992)). In determining whether plaintiff resigned voluntarily, I apply an objective standard and consider the totality of the circumstances. Yearous, 128 F.3d at 1356. I pay particular attention to the following factors: (1) whether the defendant offered the employee an alternative to resignation; (2) whether the employee understood the nature of the choice offered to him, (3) whether the employee had a reasonable time in which to choose; (4) whether the employee had the opportunity to choose the effective date of his resignation; and (5) whether the employee had the advice of counsel. Austin, 2006 U.S. Dist. LEXIS 62445, at *6 (citing Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)). "A resignation resulting from a choice between resigning or facing proceedings for dismissal is not tantamount to discharge by coercion." Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982); see also Spreen v. Brey, 961 F.2d 109, 112 (7th Cir. 1992). Further, resignation resulting from a mention of criminal prosecution is deemed coercive only "if the former employee demonstrates that the employer knew or believed that the criminal charges were false." Austin, 2006 U.S. Dist. LEXIS 62445, at *7 (citing Walsh v. City of Chi., 712 F. Supp. 1303, 1309 (N.D. Ill. 1989)).

Plaintiff argues that he had no meaningful choice except to resign because defendants had already decided to terminate him and to recommend criminal charges. However, the record does not support plaintiff's contention that he had no choice but to resign. On the contrary, he could have contested his termination and, if criminal charges

were brought, could have contested those also. The fact that Carlson had determined to terminate him did not prevent him from fighting termination. Plaintiff presents no evidence that he did not understand the nature of the choice offered to him. Carlson explained his options to him, and plaintiff consulted with his union representative before choosing to resign. Plaintiff also presents no evidence that defendants forced him to make his choice immediately or prohibited him from setting a date on which the resignation would take effect. Plaintiff apparently did not consult a lawyer, but presents no evidence that he could not have done so. He knew in advance that the union lawyer would not be present at the February 4 meeting, and he did not attempt to adjourn the meeting or seek other counsel. Plaintiff also presents no evidence indicating that defendants knew or believed that criminal charges would not be filed against him by the district attorney, or that such charges were baseless. Thus, plaintiff's allegation that defendants constructively discharged him and thereby deprived him of a property interest fails.

### 2. Deprivation of Liberty Interest

Plaintiff also alleges that defendants deprived him of a liberty interest without due process. A governmental employer deprives an employee of a liberty interest if it discharges him while making false charges against him so damaging that he is precluded as a practical matter from finding other governmental employment. Strasburger v. Bd. of Educ., 143 F.3d 351, 356 (7th Cir. 1998). To prevail on a liberty interest claim of this type, a discharged public employee must first show that a public official made defamatory statements about him. Id. These statements must be false assertions of fact. Ratliff v. City of Milwaukee, 795 F.2d 612, 625 (7th Cir. 1986). In addition, a plaintiff must show that the defendant publicly disclosed the stigmatizing information and that as a result he suffered a tangible loss of other employment opportunities. Strasburger, 143 F.3d at 356.

In the present case, plaintiff's claim fails because he presents no evidence that defendants made any untrue statements about him. A statement is not defamatory if it is true. Also, even assuming that plaintiff had shown that defendants defamed him and publicly disclosed stigmatizing information, he presents no evidence that he suffered any tangible loss of employment. Thus, plaintiff's claim that defendants deprived him of a liberty interest fails.

**B.   Equal Protection**

Plaintiff also alleges that defendants violated his right to equal protection by treating him more severely than similarly situated non-African-Americans. Plaintiff can prevail on an equal protection claim by offering direct proof of discriminatory intent or he may prove discriminatory intent by circumstantial evidence. Williams v. Seniff, 342 F.3d 774, 787-88 (7th Cir. 2003). Plaintiff seeks to use the indirect method provided in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under this approach, plaintiff must first establish a prima facie case by showing that: (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he experienced an adverse employment action; and (4) similarly situated individuals were treated more favorably. Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002). If plaintiff establishes a prima facie case, defendants must articulate a legitimate, non-discriminatory reason for their action. E.E.O.C. v. Our Lady of Resurrection Med. Ctr., 77 F.3d 145, 148 (7th Cir. 1996). If defendants offer such a reason, to survive a summary judgment motion, plaintiff must present evidence indicating that the employer's proffered reason is pretextual. Grayson v. Chicago, 317 F.3d 745, 748 (7th Cir. 2003).

Plaintiff's equal protection claim fails for several reasons. First, he fails to establish a prima facie case because he fails to identify an individual similarly situated to himself.

In order to show that a co-worker is similarly situated, a plaintiff must show that the co-worker is directly comparable in all material respects. Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). Plaintiff presents no evidence that any other individuals, white or black, engaged in conduct similar to his without similar discipline. Specifically, plaintiff presents no evidence that any other Racine County sheriff's deputy violated department policies by using OC spray unjustifiably and/or without calling in other deputies, and without allowing the sprayed inmates to decontaminate themselves. Plaintiff refers to the jail's "Use of Force" reports, which cite instances where OC spray was used on inmates and no one was disciplined. However, these reports do not show that inmates were sprayed unjustifiably and indicate that where OC spray was used on an inmate, the deputy first called in a Correctional Emergency Response Team to assist him and, after the spray had been administered, provided medical care or opportunities to decontaminate.

Even assuming that plaintiff establishes a prima facie case, his equal protection claim fails.[2] Defendants articulate a nondiscriminatory reason for seeking to terminate plaintiff. They assert that after conducting a comprehensive investigation, they found credible the allegations that plaintiff sprayed OC spray directly on inmates in their cells without justification and that he did not follow appropriate procedures before or after using the spray. Thus, to prevail, plaintiff must demonstrate pretext. In order to establish pretext, plaintiff must show that the reason proffered by defendants for firing him is a lie. Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 737 (7th Cir. 2006). He must show that: "1) it is more likely that a discriminatory reason motivated the employer than the proffered non-

---

[2] Based on the evidence of misconduct in his use of OC spray, defendant was likely not performing his job satisfactorily. Further, as discussed above, because he voluntarily resigned, he likely cannot demonstrate an adverse employment action.

discriminatory reason or 2) that an employer's explanation is not credible." Hudson v. Chicago Transit Auth., 375 F.3d 552, 561 (7th Cir. 2004). Plaintiff does not meet this burden. Plaintiff presents no evidence that defendants wanted to fire him because of his race rather than because of his conduct involving the OC spray. Moreover, plaintiff presents no evidence that defendants' explanation for terminating him is not credible. On the contrary, the evidence indicates that defendants considered his actions to be outrageous and egregious.

## VI. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**, and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 14 day of December, 2006.

/s
LYNN ADELMAN
District Judge